MIDLAND INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. BELL FUELS, INC., Defendant and Counterplaintiff-Appellant (The Continental Insurance Company *et al.*, Defendants).

First District (1st Division)   No. 85—3176

Opinion filed May 11, 1987.

Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago (Victor Piekarski and Michael Resis, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Patrick F. Klunder, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Bell Fuels, Inc. (Bell), appeals from a declaratory judgment finding that Midland Insurance Company (Midland) owed no coverage for the defense or indemnification of Bell with respect to a third-party contribution action brought against Bell by Ford Motor Company (Ford). We affirm.

James L. Howard, an employee of Bell, brought a personal injury action against Ford, Al Piemonte Ford, Inc., Genway Corporation, and Genway Fleet Leasing Corporation based on an injury which occurred in the course of his employment with Bell and while driving a vehicle leased to Bell by Genway. Ford then filed a third-party contribution action against Bell, seeking damages beyond its *pro rata* share of relative culpability in the event that Ford was found liable to Howard.

Bell tendered the case to its insurer, Midland, which refused to defend Bell. Midland then filed a declaratory judgment action asserting that it did not owe a defense to Bell by reason of certain policy exclusions. Bell brought a declaratory counterclaim against Midland, alleging that Midland had wrongfully refused to defend Bell and that Midland should be estopped to deny coverage under the terms and conditions of its policy due to its failure to defend. Midland and Bell both filed motions for summary judgment. After a hearing on the motions, the trial court granted Midland judgment on the pleadings. Bell now brings this appeal.

The question raised by this appeal is whether a comprehensive general liability policy containing an employee exclusion relieves the carrier of any duty to defend or indemnify when a third party brings a contribution against the insured employer.

The insurance policy in question initially provides as follows:

"I. COVERAGE

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *** (c) bodily injury *** to which this insurance applies ***."

The exclusion in question states that coverage does not apply:

"(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injuries."

Bell maintains that the first part of the exclusion applies only to direct actions, *i.e.*, to preclude coverage when the insured is sued by an injured employee. Bell also maintains that the second part of the exclusion should not apply in a contribution action between a third party and the employer since contribution is not a recognized form of indemnity.

Midland maintains that the exclusion does apply to Ford's third-party contribution action because, for insurance coverage purposes, Ford's third-party complaint is an action seeking damages because of bodily injury to Bell Fuels' employee, Howard. Midland also contends that for insurance coverage purposes, Ford's third-party contribution action seeks to have third-party defendant Bell indemnify Ford with respect to Howard's injury and damages.

■■ For the purpose of determining whether or not an action is entitled to the protection of a third-party defendant's insurance policy, the Illinois courts look at the nature of the underlying claim. (*State Farm Fire & Casualty Co. v. Holeczy* (1987), 152 Ill. App. 3d 448, 450, 504 N.E.2d 971; *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.* (1986), 146 Ill. App. 3d 434, 436, 496 N.E.2d 1229; *Harvey Wrecking Co. v. Certain Underwriters at Lloyd's, London* (1968), 91 Ill. App. 2d 449, 235 N.E.2d 385.) In *Harvey Wrecking Co.*, this court considered a coverage in a similar fact situation which involved an exclusion almost identical to that in Midland's policy. An employee who had been injured in the course of his employment sued the owner of the premises where he had been working, and the owner in turn filed a third-party complaint against the injured employee's employer seeking express and implied indemnity.

The employer tendered its defense to the insurer, who declined to defend the employer. The employer argued that the indemnity action of the property owner against it was so distinct from the underlying action by the employee against the property owner as to fall outside the exclusion. This court disagreed and held that where the third-

party action is sufficiently retentive of the characteristics of the underlying claim and the underlying claim falls within an exclusion, the third-party claim was also excluded from coverage as a matter of law. *Harvey Wrecking Co. v. Certain Underwriters at Lloyd's, London* (1968), 91 Ill. App. 2d 449, 454, 235 N.E.2d 385.

More recently, in *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.* (1986), 146 Ill. App. 3d 434, 496 N.E.2d 1229, the court construed an exclusion also almost identical to the exclusion at issue here. In *Aetna*, Dale Brazier, an employee of Beautiful Signs, was killed in an accident while working for his employer on the property of George Kontos. The administrator of Brazier's estate brought an action against Kontos, who then brought a third-party action against Beautiful Signs under the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*).

As Bell Fuels did here, Beautiful Signs tendered the case to its insurer, Aetna. Aetna instituted a declaratory judgment action asserting that coverage was precluded by an exclusion in the policy. The trial court held that the exclusion did not preclude coverage but the appellate court reversed.

The appellate court noted that the general liability policy issued by Aetna to Beautiful Signs was designed to exclude coverage for employee injuries because such injuries were covered through worker's compensation insurance. The court stated that although much was made of the fact that the suit was a third-party action, it was Brazier's injuries for which Beautiful Signs would become liable. The court concluded that if a jury made an award to Kontos on the third-party action, it would not be for a duty that existed between Beautiful Signs and Kontos, but for injuries to Brazier, precisely the type of situation for which the exclusion was drafted. *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.* (1986), 146 Ill. App. 3d 434, 436, 496 N.E.2d 1229.

■ On review of the facts here and in light of *Aetna*, we concur with the trial court that the exclusion should apply. Howard was injured in the course of his employment with Bell while driving a Ford vehicle leased to Bell by Genway. He brought a personal injury action against Ford, which then brought a third-party action against Bell seeking contribution if Ford was found liable to Bell.

In form, Ford's action against Bell seeks to recover economic damages, *i.e.*, to recover any dollar loss it might incur either as a result of judgment in favor of Howard or as a result of settlement with Howard. In substance, however, the damages for which Bell would be liable would be for Howard's personal injuries. Midland's

policy does not provide any insurance protection to Bell for suits for purely economic losses. Coverage is provided only for bodily injury losses.

Bell urges us to adopt a contrary view expressed by the Court of Appeals of New York in *Insurance Co. of North America v. Dayton Tool & Die Works, Inc.* (1982), 57 N.Y.2d 489, 457 N.Y.S.2d 209, 443 N.E.2d 457. That court considered an identical issue with respect to the same exclusions. The court found that the first half of the exclusion could not apply to a contribution action because conceptually an action for contribution against the employer "does not render the employer directly responsible to the employee; it only affects the employer's liability to third parties." (*Insurance Co. of North America v. Dayton Tool & Die Works, Inc.* (1982), 57 N.Y.2d 489, 496, 457 N.Y.S.2d 209, 212, 443 N.E.2d 457, 460.) The court then held that the second half of the exclusion did not apply to actions for contribution, noting that since indemnity differs from contribution, any exclusion which referred to obligations to indemnify could not be broadly extended by implication to include actions for contribution as well.

Although the court in *Dayton Tool* reached a contrary result, it is not consistent with Illinois law as set forth in, *e.g.*, *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.* (1986), 146 Ill. App. 3d 434, 496 N.E.2d 1229, and *Harvey Wrecking Co. v. Certain Underwriters at Lloyd's, London* (1968), 91 Ill. App. 2d 449, 235 N.E.2d 385. Moreover, in reaching its decision, the New York court adopted a highly technical approach to the term "indemnify" derived from prior New York case law. As did the court in *Dayton Tool*, Bell equates the word "indemnify," which is used throughout Midland's policy, with the legal term of art "indemnity." Bell then asserts that because Ford is not seeking "indemnity," the exclusion does not apply.

It is amply demonstrated in Midland's brief that the verb "indemnify" encompasses more than the legal concept of indemnity. Webster's New Collegiate Dictionary (9th ed. 1983) defines "indemnify" as "to make compensation to for incurred hurt, loss or damage" and lists the word "pay" as a synonym. (Webster's New Collegiate Dictionary 612 (9th ed. 1983).) Black's Law Dictionary defines the word "indemnify" as meaning "[t]o save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling on him." (Black's Law Dictionary 692 (5th ed. 1979).) While many dictionaries do not include "insure" among the definitions of "indemnify" (see, *e.g.*, Webster's Third New International Dictionary 1147 (1986); Webster's New Collegiate Dictionary 612 (9th ed. 1983); Black's Law Dictionary 692 (5th ed. 1979)), the

term "indemnity," in contrast, is generally more narrowly defined to mean "insure." Black's Law Dictionary defines "indemnity" as "[a] collateral contract or assurance, by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person." Black's Law Dictionary 692 (5th ed. 1979).

The legal distinctions between indemnity and contribution have been discussed at length in numerous cases, among them *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 16-17, 461 N.E.2d 382, where the court stated:

> "[i]ndemnity, *** unlike contribution, has the effect of shifting the entire loss from the defendant to another party ***. An action for contribution shifts only part of the loss depending on the comparative responsibility of the parties ***."

See also *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 291, 486 N.E.2d 1379 ("Contribution and indemnity are distinct legal concepts: the elements of the actions differ as well as the measure of recovery").

■ At issue here is not whether indemnity differs from contribution but whether it was the expectation of the parties in drafting the second clause of exclusion "c" that any obligation to contribute to a third party a share of the money paid by him as damages for bodily injury to an employee of the insured is encompassed within the concept "indemnify" as used in exclusion "c." We believe that it was. We interpret exclusion "c" to exclude from coverage an obligation of the insured to indemnify for damages resulting from injury to Bell's employee whether the obligation is asserted by way of contribution or indemnification.

Bell also relies on *Howalt v. Ohio Casualty Insurance Co.* (1986), 142 Ill. App. 3d 435, 491 N.E.2d 1207. The plaintiff in *Howalt* injured a co-employee, Mozden, who then brought an action against the employer, Mozden Construction Company. Mozden Construction Company then brought a third-party complaint for contribution against Howalt. The comprehensive general liability insurer, Ohio Casualty Insurance Company, refused to defend Howalt, relying upon a co-employee exclusion which barred liability coverage to any employee of the named insured for bodily injury to "another employee of the same employer arising out of or in the course of his employment."

The trial court found that this co-employee exclusion did not apply in the third-party contribution action brought against the co-employee in the original action for bodily injuries, notwithstanding that their

employer was apparently also insured separately under a policy covering workers' compensation claims. The appellate court affirmed, holding that the co-employee exclusion did not bar contribution claims against an employee arising from injury to a co-employee. (*Howalt v. Ohio Casualty Insurance Co.* (1986), 142 Ill. App. 3d 435, 441, 491 N.E.2d 1207.) The exclusion at issue in *Howalt*, however, by its terms applied only to a claim by one employee against a fellow employee. There was no additional or alternative exclusion that denied coverage for contribution or indemnification claims asserted against a tortfeasor employee which arose out of an injury to a co-employee.

We conclude that the trial court correctly found that there is no coverage available under the Midland Insurance Company policy for the defense or indemnity of Bell Fuels, Inc., with respect to the third-party action brought against it by Ford Motor Company in the underlying action.

Judgment affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.