RELIANCE INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellant and Intervening Defendant-Appellant, v. NICK J. GIANNINI, INC., Defendant-Appellee (Higgins Asphalt Company, Inc., *et al.*, Intervenors-Appellees).

First District (1st Division)   No. 86—2561

Opinion filed July 13, 1987.—Rehearing denied August 19, 1987.—Modified opinion filed August 24, 1987.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Charles M. Ahrendt, and Kristine A. Karlin, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (Anthony P. Katauskas and Karl R. Fink, of counsel), for appellees Higgins Asphalt Company, Inc., Wight Consulting Engineers, Inc., and George Wight.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

This is a declaratory judgment action in which Reliance Insurance Co. (Reliance) appeals from the decision of the circuit court of Cook County granting summary judgment to intervenors-appellees Higgins Asphalt Co., Inc. (Higgins), and Wight Consulting Engineers, Inc., and George Wight (collectively Wight). The intervenors claimed that Reliance was obligated to provide coverage concerning their underlying claim for contribution against Reliance's insured, Nick J. Giannini (Giannini), and on Higgins' claim against Giannini for its breach of contract to procure insurance. Reliance now has filed this interlocutory appeal pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308) and seeks to vacate the orders of summary judgment that found it did owe coverage and that Reliance had a duty to defend Giannini in the underlying third-party actions. Giannini is not a party before the court in this appeal.

Higgins was the general contractor and Wight was the structural engineer at a construction site in Lake Zurich, Illinois. In October of 1979, Higgins entered into an oral agreement with Reliance's insured, Giannini, to perform certain sewer excavation work at the Lake Zurich site. On February 28, 1980, one of the sewer trenches collapsed, killing two of Giannini's employees and injuring a third. Giannini was out of State at the time of the accident but testified at his deposition, parts of which were submitted in support of the motion for summary judgment, that he flew back the next day and executed the written contract herein with Higgins. However, the written contract was dated February 26, 1980.

At the time of the accident Giannini was covered against workers' compensation claims by a Liberty Mutual Insurance policy which insured individual claims up to $100,000. The company also had coverage through Reliance on a comprehensive general liability policy (CGL) with claim limits of $500,000. However, the subcontract with Higgins required Giannini to provide certificates that it was covered in the amount of $500,000 for workers' compensation claims and $1 million for comprehensive general liability claims. In addition, under the contract the comprehensive general liability policy was required to have a hold harmless agreement on behalf of the contractor Higgins. The subcontractor Giannini was required to hold Higgins harmless under the following provision:

> "The Subcontractor shall save and hold harmless, the Contractor from and against all liability, claims and demands of whatsoever kind or nature arising out of or connected with the performance of work by the Subcontractor, or in behalf of the Contractor, whether such injury, death, loss or damage shall have been occasioned by negligence of the Subcontractor, or a subcontractor of the Subcontractor of the Contractor, or their employees; or otherwise. The Subcontractor will defend at his own expense any actions based thereon and shall pay all charges and all costs and other expenses arising therefrom."

A separate lawsuit is presently pending between Higgins and Giannini to determine the obligation of the parties under the alleged terms and conditions of the subcontract agreement.

The injured employee and the administrators of the estates of the deceased employees previously filed a suit against Higgins and Wight on the basis of negligence and Structural Work Act violations. Higgins filed a third-party suit against Giannini on theories of contribution, breach of contract to procure insurance, written indem-

nity, and implied indemnity. The trial court dismissed the indemnity counts. Wight then filed a third-party claim against Giannini seeking contribution. Giannini tendered its defense to Reliance, which filed this declaratory judgment action against Giannini alleging that no coverage existed and that it had no duty to defend in the third-party action because of the policy exclusions therein.

Thereafter, Higgins and Wight effected settlement in the underlying personal injury and wrongful death actions and intervened here in Reliance's declaratory judgment action. Cross-motions for summary judgment were filed and the trial court granted Higgins' and Wight's motions and denied Reliance's motion. Reliance filed a motion for reconsideration which the trial court denied in its entirety on August 7, 1986. Reliance, as stated previously, has now appealed from the granting of Higgins' and Wight's motions for summary judgment and the finding of coverage and a duty to defend under the comprehensive liability policy. The issues before this court are whether the employee exclusion in the CGL applies to third-party contribution claims, whether the insured's failure to procure insurance in the amounts specified in the subcontract is a covered occurrence within the incidental contract provisions of the CGL, and whether the subcontract was an existing incidental contract at the time of the accident to trigger the CGL obligation.

◼◼ The first issue presented, whether a CGL containing an employee exclusion relieves the carrier of any duty to defend or indemnify when a third party brings a contribution action against the insured employer, was recently decided by this court in *Midland Insurance Co. v. Bell Fuels, Inc.* (1987), 159 Ill. App. 3d 780. The *Midland* case was decided after the trial court here had granted summary judgment to the intervenors and after Reliance had filed its appeal. The trial court, finding no Illinois law on point, had relied on *Insurance Company of North America v. Dayton Tool & Die Works, Inc.* (1982), 57 N.Y. 2d 489, 443 N.E.2d 457, 457 N.Y.S.2d 209, in its ruling on the cross-motions for summary judgment. However, this court in *Midland* expressly rejected both the holding and the reasoning of *Dayton Tool.*

In *Midland*, James Howard was injured in the course of his employment while driving a vehicle leased by Genway Ford to his employer, Bell Fuels. Howard filed a personal injury claim against Ford, which in turn filed a third-party contribution action against Bell and then settled with Howard. Bell tendered its defense to Midland, which filed a declaratory judgment action against Bell claiming that it had no duty to defend under these circumstances because of

the employee exclusion provision in the policy. Bell then filed a counterclaim against Midland in the declaratory judgment suit, alleging that Midland should be estopped to deny coverage because of its wrongful refusal to defend in the third-party contribution action. After a hearing on the cross-motions for summary judgment, the trial court granted Midland's motion and denied Bell's motion; Bell then appealed. On appeal, our court stated:

> "where the third-party action is sufficiently retentive of the characteristics of the underlying claim and the underlying claim falls within an exclusion, the third-party claim was also excluded from coverage as a matter of law. [Citation.]" (*Midland Insurance Co. v. Bell Fuels, Inc.* (1987), 159 Ill. App. 3d 780, 783.)

The court further held that although the form of action, *i.e.*, contribution, only sought money damages from the employer as a joint tortfeasor, in substance it was an action for the employee's personal injuries which was excluded from coverage under the terms of the policy. 159 Ill. App. 3d 780, 783.

We believe the present case is on all fours with *Midland*, and that, accordingly, the *Midland* decision is controlling. As in *Midland*, the potentially liable party here settled with the injured employee and then sued the employee's employer for contribution. Both policies have the identical employee exclusion, which provides for the exclusion of all claims involving:

> "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injuries."

In both cases the underlying claim, thus, falls, as we held in *Midland*, squarely within the employee exclusion. Additionally, even if the contribution claim could be characterized as purely a claim for economic loss rather than for an employee's personal injuries, as argued by the defendant here, the policy, as in *Midland*, limits coverage solely to occurrences of bodily injury, not economic loss. *Midland Insurance Co. v. Bell Fuels, Inc.* (1987), 159 Ill. App. 3d 780, 783-84; see also *Sentry Insurance Co. v. S & L Home Heating Co.* (1980), 92 Ill. App. 3d 687, 690-91, 414 N.E.2d 1218, 1221.

■ Insurance policies, like any contract, are construed to effectuate the intent of the parties so long as the plain meaning of the words is not distorted. When Reliance drafted the employee exclusion clause in 1979, Illinois had not yet enacted the Contribution Act and our courts had not yet been called upon to distinguish between

contribution and indemnity actions in controversies involving employers' insurers. (See *Midland Insurance Co. v. Bell Fuels, Inc.* (1987), 159 Ill. App. 3d 780; *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.* (1986), 146 Ill. App. 3d 434, 436, 496 N.E.2d 1229, 1231.) Furthermore, the *Midland* case held that contribution and indemnity claims should be treated similarly for purposes of the exclusion because the purpose of both was the same. (See, *e.g.*, *Country Mutual Insurance Co. v. Jacobus* (C.D. Ill. 1985), 601 F. Supp. 937; *State Farm Fire & Casualty Co. v. Holeczy* (1987), 152 Ill. App. 3d 448, 504 N.E.2d 971; *Prudential Property & Casualty Co. v. Piotrowski* (1986), 149 Ill. App. 3d 833, 501 N.E.2d 250; *State Farm Mutual Automobile Insurance Co. v. Suarez* (1982), 104 Ill. App. 3d 556, 432 N.E.2d 1204; *Harvey Wrecking Co. v. Certain Underwriters at Lloyd's* (1968), 91 Ill. App. 2d 449, 235 N.E.2d 385.) Accordingly, we believe that *Midland* should control the outcome here and, thus, we find that the trial court erred in granting the intervenors' motions for summary judgment on their third-party claims for contribution. Hence, we must reverse the trial court's award of summary judgment as to the contribution claims of Higgins and Wight and remand the cause with directions to enter summary judgment in favor of Reliance concerning the underlying contribution counts in favor of Higgins and Wight. We further find that the entire cause must be reversed for the reasons set forth below.

■ The next issue presented is whether Reliance must, nevertheless, provide coverage under the breach of contract claim, which Higgins filed against Giannini for its failure to procure insurance in the amounts specified in the oral subcontract agreement, under the incidental contract coverage of the CGL. The policy issued by Reliance had an incidental contractual liability rider which broadly defined an incidental contract as "any contract or agreement relating to the conduct of the named insured's business." Higgins contends that Giannini's oral agreement to procure insurance, as part of the subcontract, was enforceable as a contract incidental to the insured's business under the "contract or agreement relating to the conduct of the named insured's business" provision. The intervenor thus claims that Reliance covered Giannini for its breaches of contract, including the breach of its promise to procure insurance, under the incidental contractual liability rider to the CGL policy. We agree with Higgins that the insurer can be held liable for its insured's promise to provide indemnity insurance under what it submits is a reasonable construction of the terms of the CGL provision. (See *Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 618,

427 N.E.2d 189, 191; see also *St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919; *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611.) However, after examining the terms of the policy, we must conclude that such a construction is not reasonable here, and that coverage under the "incidental contract" liability rider, for the breach of an agreement to procure insurance, would be inconsistent with what the parties here, as experienced business persons, intended at the time they executed the contract. We, thus, agree with the insurer that the reasonable interpretation of this provision is that coverage was intended to be provided solely for obligations incurred by the insured under contracts of indemnity and not obligations incurred for a breach of a contract to procure insurance. Since we find no incidental contract coverage here, we do not reach the second issue of whether the contract to procure insurance was executed at the time of the occurrence.

Accordingly, we reverse the order of the circuit court granting summary judgment to Higgins on its breach of contract claim, since we find that a contract to procure insurance is not included within the meaning of the policy provision covering incidental contracts to the insured's business, and hold that the defendant Reliance is entitled to summary judgment on this issue. Additionally, as stated earlier, we also reverse the summary judgment entered against Reliance on its obligation to provide coverage concerning the underlying contribution claims and remand that case with directions to enter judgment on behalf of Reliance on that count as well.

Reversed and remanded.

BUCKLEY and O'CONNOR, JJ., concur.