GERALDINE DOWLING, Ex'r of the Estate of Patrick Dowling, Deceased, Plaintiff, v. OTIS ELEVATOR COMPANY *et al.*, Third–Party Plaintiffs-Appellants (Schal Associates, Inc., Third–Party Defendant-Appellee).

First District (6th Division) No. 1—88—2961

Opinion filed December 29, 1989.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Charles P. Menges, and Christine L. Olson, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido, Nancy G. Lischer, and Michael J. Flaherty, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

This appeal arises from the dismissal of the third-party complaint for contribution filed by Otis Elevator Company (Otis) against Schal Associates, Inc. (Schal). The underlying action was brought by Geraldine Dowling, the executor of the estate of Patrick Dowling, seeking relief for the wrongful death of her son, who was employed by Schal and working on the site. Schal's motion to dismiss was based upon a contractual provision in Otis' subcontract with Schal in which Otis had agreed to procure insurance naming Schal as an additional insured. Schal contended that the parties to the construction subcontract, by agreeing that insurance would be provided, had agreed to mutually exculpate each other in the event of any personal injuries or loss resulting from the construction. The trial court granted Schal's motion to dismiss. Otis has appealed the denial of its subsequent motion to reconsider the dismissal order. Only Schal and Otis are parties to this appeal.

On appeal, Otis contends that the trial court erred in finding that it was precluded from maintaining a contribution action against Schal. Schal has filed a motion to dismiss the appeal, asserting that Otis' notice of appeal was not timely filed.

On November 19, 1984, Patrick Dowling, the plaintiff's decedent and an employee of Schal, was injured while working on a construction project for which Schal was the construction manager and Otis was a subcontractor who agreed to furnish and install all of the elevators required for the construction project. Plaintiff, Geraldine Dowling, executor of the estate of Patrick Dowling, subsequently brought an action against Otis, Miglin-Beitler Development, Inc., and Madison Plaza Corporation, seeking relief for the alleged wrongful death of her son. Otis answered the complaint and denied all material allegations.

Otis thereafter filed a third-party complaint against Schal, seeking contribution for allegedly negligent conduct by Schal which resulted in the death of plaintiff's decedent. Specifically, Otis asserted that Schal was negligent by failing to instruct and supervise its employees, failing to barricade an elevator shaft, failing to provide outer doors to an elevator shaft, and failing to inform subcontractors when people would be working in or around the elevator shaft.

Schal moved to dismiss the third-party complaint, asserting that because Otis had agreed to name Schal as an additional insured on its comprehensive general liability policy, Otis was precluded from maintaining a contribution action against Schal. At the hearing on the motion to dismiss, counsel for Schal argued that by the terms of the subcontract, Otis had agreed to indemnify Schal through insurance. Counsel contended that Otis was, therefore, precluded from bringing its third-party action against Schal for contribution. On January 26, 1988, the trial judge granted Schal's motion to dismiss the third-party complaint with prejudice, finding that the insurance provision in the contract was controlling. The court also held that the order was final and appealable with no just reason for delay in its enforcement or appeal.

On February 16, 1988, Otis filed a timely motion to reconsider the dismissal order. At the hearing on Otis' motion to reconsider, counsel for Schal argued that the subcontract evidenced a determination by the parties as to how a loss was to be apportioned. Counsel for Schal contended further that Otis' procurement of insurance for Schal prohibited Otis from seeking contribution from Schal in the event of a loss for which both parties were responsible. On that date, another circuit court judge *sua sponte* vacated the language pursuant to Su-

preme Court Rule 304(a) (107 Ill. 2d R. 304(a)) and continued the hearing on the merits of the motion for reconsideration because the trial judge who entered the dismissal order of January 26, 1988, was on vacation. Schal thereafter filed its response to Otis' motion.

On August 8, 1988, the original trial judge denied Otis' motion for reconsideration, stating that Otis' agreement to provide insurance amounted to exculpation of Schal. The court again held that its order was final and appealable with no just reason for delay in its enforcement or appeal. On August 26, 1988, Otis filed the instant appeal.

The subcontract between Schall and Otis included an insurance rider which required Schal to maintain comprehensive general liability insurance with the employee exclusion deleted. The insurance rider to the subcontract also required Otis to maintain comprehensive general liability insurance with the employee exclusion deleted. Furthermore, Otis was required to name Schal as an additional insured under its comprehensive general liability policy, excluding coverage for the sole negligence of Schal. In addition, both Schal and Otis were obligated to maintain workers' compensation insurance.

The subcontract also included an indemnification clause whereby Otis agreed to indemnify Schal for any and all damages sustained by reason of accidents occurring during the work and caused by the act or omission of Otis. Although the insurance rider provided that the employee exclusion was to be deleted from Otis' comprehensive general liability insurance, the policy ultimately obtained by Otis included such an exclusion.

Schal filed a motion to dismiss Otis' notice of appeal on the ground that it was not timely filed. This court ordered that the motion to dismiss be taken with the case. Because our jurisdiction generally depends upon the timely filing of a notice of appeal, we initially consider the arguments raised in Schal's motion to dismiss the appeal.

■ At the time the original dismissal order was entered, Illinois Supreme Court Rule 304(a) provided as follows:

> "(a) Judgments As To Fewer Than All Parties or Claims—Necessity for Special Finding. If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. *The time for filing the notice of appeal shall run from the entry of the required finding.* In

the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) 107 Ill. 2d R. 304(a).

In *Elg v. Whittington* (1987), 119 Ill. 2d 344, 518 N.E.2d 1232, the Illinois Supreme Court examined the effect of a timely motion to reconsider a piecemeal judgment entered in multiclaim or multiparty litigation and held that the filing of such a motion did not toll the running of the 30-day period for filing a timely notice of appeal based upon a Rule 304(a) finding. The *Elg* decision was applied prospectively to all cases in which the notice of appeal was filed or due to be filed on or after November 16, 1987.

In *Parrish v. Lee* (1988), 167 Ill. App. 3d 443, 521 N.E.2d 1188, the third district cited *Elg v. Whittington* in holding that when a trial court makes a Rule 304(a) finding, it loses jurisdiction, preventing revision of the final judgment, and a post-trial motion directed against that judgment would be of no effect. (*Parrish*, 167 Ill. App. 3d at 446, 521 N.E.2d at 1189.) Thus, the court concluded that inclusion of Rule 304(a) language in an order divests a trial court of jurisdiction to rule on a motion to vacate, and the 30 days allowed for filing an appeal of that order are not tolled by the subsequent motion to vacate. *Parrish*, 167 Ill. App. 3d at 446-47, 521 N.E.2d at 1190.

Relying on *Elg* and *Parrish*, Schal has asserted that the trial court's inclusion of Rule 304(a) language in the January 26, 1988, dismissal order divested the court of jurisdiction to entertain Otis' motion for reconsideration. Several appellate cases decided subsequent to *Elg* have held that a trial court retains jurisdiction to rule on a timely post-trial motion and that the court is not divested of jurisdiction until a notice of appeal is properly filed. (*Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, 185, 541 N.E.2d 1376, 1379-80; *Lake County Trust Co. v. Two Bar B, Inc.* (1989), 182 Ill. App. 3d 186, 191, 537 N.E.2d 1015, 1019; *Cain v. Sukkar* (1988), 167 Ill. App. 3d 941, 945, 521 N.E.2d 1292, 1294.) We believe that the better reasoned conclusion is that reached in *Battisfore, Lake County Trust Co.*, and *Cain*. This conclusion is supported by the supreme court's amendment of Rule 304(a) which provides that the notice of appeal must be filed within 30 days of the court's disposition of the last pending post-trial motion, see June 28, 1989, Official Reports Advance Sheet No. 13, 134 Ill. 2d R. 304(a).

The facts of the instant case compel a similar result. Here, Otis

filed a timely motion for reconsideration, and the Rule 304(a) language included in the dismissal order was vacated within the 30-day period for appeal. Consequently, the trial court clearly retained jurisdiction to entertain and rule on Otis' motion for reconsideration. (*Battisfore*, 186 Ill. App. 3d at 185, 541 N.E.2d at 1379-80.) Otis' notice of appeal was filed within 30 days of the court's denial of its motion for reconsideration and was, therefore, timely. Accordingly, Schal's motion to dismiss the appeal is denied.

Having concluded that we have jurisdiction over this matter, we now address the issues raised by the parties.

■■ ■ Otis asserts that the trial court erred in finding that the terms of the subcontract precluded Otis from maintaining a third-party action against Schal. It is undisputed that indemnification provisions in construction contracts which relieve a person of liability for his own negligence are void as against public policy and are wholly unenforceable. (Ill. Rev. Stat. 1985, ch. 29, par. 61; *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 613, 506 N.E.2d 996, 998.) Thus, Schal's argument before the trial court that Otis was obligated to indemnify Schal through insurance was without merit and insufficient to support the motion to dismiss the third-party complaint.

■■■ On appeal, Schal contends that the insurance provision and indemnity clause in the subcontract evidence the intent of the parties to "mutually exculpate" each other in the event of a loss arising out of the construction project. The terms of the contract do not, however, provide sufficient basis to preclude the third-party action. It has been held that a promise to obtain insurance is not the same as a promise to indemnify. (*Zettel v. Paschen Contractors, Inc.* (1981), 100 Ill. App. 3d 614, 617, 427 N.E.2d 189, 191; *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 783, 401 N.E.2d 1032, 1036.) Under an indemnity agreement, the promisor agrees to assume all responsibility and liability for injuries or damages. Under an agreement to obtain insurance, the promisor merely agrees to procure the insurance and to pay the premiums. (*Zettel*, 100 Ill. App. 3d at 617-18, 427 N.E.2d at 192.) An agreement to obtain insurance is not an agreement of insurance, and a person promising to obtain insurance does not by that promise become an insurer. (*Zettel*, 100 Ill. App. 3d at 617, 427 N.E.2d at 191.) The obligation to provide insurance is contractual, and unless the contract indicates otherwise, the mere obtaining of insurance will not bind a party to exculpate the insured from any and all loss associated with a particular venture. See *Rome*, 81 Ill. App. 3d at 783, 401 N.E.2d at 1036.

■■ Indemnity contracts will not be construed as relieving one of

liability for his own negligence unless such an intention is expressed in unequivocal terms. (*Fourfouris v. Standard Oil Realty Corp.* (1981), 100 Ill. App. 3d 162, 163, 426 N.E.2d 915, 916.) The same reasoning should be applied to agreements which purport to exculpate a party from his own negligence. In the case at bar, Otis agreed to provide Schal with comprehensive general liability insurance and to indemnify Schal against Otis' negligence. These contract provisions do not include clear or explicit language that states in unequivocal terms that Otis intended to exculpate Schal from Schal's own negligence. The plain language of the contract renders such a construction unsupportable. See *Hibbler v. Ockerlund Construction Co.* (1985), 130 Ill. App. 3d 30, 33-34, 473 N.E.2d 597, 600 (Linn, J ., dissenting).

The insurance clause in the instant case is similar to that considered in *Bosio v. Branigar Organization, Inc.* (1987), 154 Ill. App. 3d 611, 506 N.E.2d 996. There, the court construed a contract provision requiring a contractor to obtain public liability insurance to protect the owner of the property. The court held that such a provision was valid because it protected the interests of the construction workers and the general public by preserving a potential source of compensation for injured workers. (*Bosio*, 154 Ill. App. 3d at 614, 506 N.E.2d at 998.) The court held further that a contract provision requiring a contractor to obtain public liability insurance to protect the owner of property was not an agreement to indemnify or to hold another person harmless from that person's own negligence. *Bosio*, 154 Ill. App. 3d at 615, 506 N.E.2d at 999.

It must be noted that Otis' claim against Schal was for contribution and was based upon Schal's allegedly negligent conduct which resulted in the death of plaintiff's decedent. Thus, Otis' third-party complaint sought recovery from Schal only to the extent of Schal's negligence and its *pro rata* share of the common liability. (Ill. Rev. Stat. 1985, ch. 70, par. 301 *et seq.*) An agreement indemnifying Schal for its own negligence would be void. (Ill. Rev. Stat. 1985, ch. 29, par. 61.) Because the terms of the contract do not include unequivocal language requiring Otis to exculpate Schal from liability for its own negligence, Otis should be permitted to maintain its third-party action against Schal.

It may be true that any judgment against Schal will be satisfied out of the insurance proceeds from the policy obtained by Otis. Thus, the insurance provision indicates an acknowledgement by the parties that Schal may be held liable for losses arising out of the construction project. By the terms of the contract, the parties provided that Schal would be insured against such losses under the policy ob-

tained and paid for by Otis. Otis' agreement to provide such insurance is not the same as a clear and explicit waiver of its right to contribution and does not preclude Otis from asserting its right to contribution from Schal for its *pro rata* share of the common liability. Schal cannot successfully argue that the existence of insurance coverage determines the issue of liability any more than the plaintiff would be able to make such a claim in the underlying action.

■■■ We also note that, contrary to Schal's assertion, the subcontract does not reflect that the parties intended to "mutually exculpate" each other. Examination of the contract terms reveals that they do not express any mutuality of an obligation to exculpate. Rather, the contract provisions indicate that Otis was required to indemnify Schal for any personal injury, wrongful death, or property damage claims occasioned by Otis' negligence. Furthermore, Otis was required to procure and maintain a comprehensive general liability insurance policy, deleting the employee exclusion and naming Schal as an additional insured. The subcontract does not impose any similar obligations upon Schal to protect or insure Otis against potential claims. Consequently, the record before the court does not support Schal's claim that the parties intended to "mutually exculpate" each other against liability arising out of the construction project.

The cases relied upon by Schal are factually distinguishable from the instant case and are not controlling. In *One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400, *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100, both involving fire losses, and *Signode Corp. v. Normandale Properties, Inc.* (1988), 177 Ill. App. 3d 526, 532 N.E.2d 482, involving a roof collapse, the courts considered the terms of property leases and construed provisions requiring a tenant to return the property to the landlord in substantially the same condition as when it was received. Although these cases addressed the obligations of the parties to insure against such losses and the parties' liability for losses caused by their own negligence, these decisions are clearly limited to factual circumstances involving lease provisions agreed to by landlords and tenants. (See *One Hundred South Wacker Dr., Inc.*, 60 Ill. 2d at 316, 326 N.E.2d at 402.) Consequently, they are not controlling in the case at bar.

*Midland Insurance Co. v. Bell Fuels, Inc.* (1987), 159 Ill. App. 3d 780, 513 N.E.2d 1, and *Reliance Insurance Co. v. Nick J. Giannini, Inc.* (1987), 158 Ill. App. 3d 657, 511 N.E.2d 755, both involved declaratory judgment actions brought by insurers seeking to deny coverage for the defense or indemnification of its insured with respect to

third-party contribution actions. These cases concerned the duty of an insurer to defend or indemnify against third-party actions in light of certain specific coverage exclusions contained in the policies there at issue. The decisions in *Midland* and *Reliance* are also not applicable to the case at bar.

In *Village of Rosemont v. Lentin Lumber Co.* (1986), 144 Ill. App. 3d 651, 494 N.E.2d 592, *Fourfouris v. Standard Oil Realty Corp.* (1981), 100 Ill. App. 3d 162, 426 N.E.2d 915, and in *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 408 N.E.2d 1129, the evidence presented clearly established that the parties to the contracts in issue intended that the insurance provided by the contractors was to protect against any personal liability on the part of the property owners and that the contractors had specifically waived all rights to contribution from the owners. In the instant case, there is no evidence indicating that the parties intended that the insurance provided by Otis was to protect Schal against all liability or that Otis had waived its right to contribution from Schal. Thus, the decisions in these cases are also not applicable to the instant case.

■■ The record and the applicable case law support the conclusion that Otis agreed to provide comprehensive liability insurance for Schal and that Otis agreed to indemnify Schal for Otis' negligence. Otis did not waive its right to contribution from Schal or agree to indemnify Schal for its own liability.

■■ Although Schal may have a claim against Otis under a breach of contract theory for its failure to obtain an insurance policy with the employee exclusion deleted, this should not preclude Otis from asserting its right to contribution. Moreover, the record does not indicate that the parties intended that the insurance coverage obtained by Otis protected Schal from liability and made Schal immune to suit for contribution on the basis of its *pro rata* share of the common liability.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McNAMARA and DiVITO, JJ., concur.