GLORIA BRISENO, Indiv. and for the benefit of Beatriz Briseno *et al.*, and as Special Adm'r of the Estate of Jose Briseno, Deceased, Plaintiff, v. CHICAGO UNION STATION COMPANY *et al.*, Defendants and Third-Party Plaintiffs-Appellants (National Wrecking Company, Third-Party Defendant-Appellee).

First District (3rd Division)   No. 1—87—2483

Opinion filed April 25, 1990.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Alan H. Swanson, Stephen R. Swofford, and Bruce L. Carmen, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin, and Kenneth A. Peterson, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendants and third-party plaintiffs, Chicago Union Station Company, Tishman Construction Corporation of Illinois, Equitable Life Assurance Society of the United States and TJC Associates, Inc. (collectively Chicago Union), appeal from an order of the circuit court of Cook County which dismissed with prejudice their third-party contribution claim filed against National Wrecking Company (NWC). We affirm.

This matter arose from an underlying wrongful death and Structural Work Act (Ill. Rev. Stat., 1985, ch. 48, par. 60 *et seq.*) lawsuit filed against Chicago Union by the estate of Jose Briseno (Briseno). Briseno, a NWC employee, was killed while working on the demolition of the old Union Station building. The site was being excavated in preparation for the construction of a new office complex owned, operated and/or managed by Chicago Union.

The demolition work was done pursuant to a written contract between Chicago Union and NWC. Pursuant to the terms of the contract, NWC purchased $30 million in comprehensive general and contractors liability insurance from Bituminous Casualty Company and an excess comprehensive general liability insurer (Bituminous). NWC paid all premiums due under the policy. The Bituminous policies which were issued to NWC named it as the insured and Chicago Union as additional insureds. Bituminous accepted coverage of the Briseno claim and engaged counsel to defend Chicago Union in the legal action.

Thereafter, Chicago Union, through Bituminous, filed a third-party action for contribution against NWC seeking to shift part of the loss from Bituminous to NWC. NWC moved for summary judgment on the basis that Chicago Union had no right to seek further recovery from NWC for a loss against which it had already been fully protected by NWC's purchase of insurance. NWC further argued that Bituminous had no right to manipulate the pleadings to shift the loss back to

NWC, a named insured and the purchaser of the policy issued to NWC. The trial court denied NWC's motion for summary judgment while holding that Chicago Union could only maintain its contribution action against NWC if Chicago Union's liability was not completely covered by the insurance policy purchased by NWC.

Prior to trial on the underlying wrongful death and Structural Work Act matter, Chicago Union and Briseno entered into a settlement agreement in the amount of $875,000 which was covered by the Bituminous insurance policy. After the Briseno claim was settled, the trial court granted NWC's motion to dismiss Chicago Union's third-party contribution claim. This appeal followed.

On appeal, Chicago Union contends that the trial court erred in ruling that the contractual agreement between Chicago Union and NWC which provided, *inter alia*, that NWC provide comprehensive general public and personal injury liability insurance for Chicago Union, barred Chicago Union's subsequent contribution action against NWC. We disagree with Chicago Union's contention.

The contract between Chicago Union and NWC for demolition services provided in pertinent part:

> *"Rider 'B' Insurance Requirements*
>
> A. Prior to commencement of any work under this Contract and until completion and final acceptance of the Work, the Contractor and each and every Subcontractor of the Contractor shall, at his sole expense, maintain the following insurance on its own behalf, and furnish to the Owner and/or Construction Manager, certificates of insurance evidencing same as follows:
>
> The term 'Contractor and Subcontractor' as used in this Insurance Rider shall mean and include Contractors and Subcontractors of every tier.
>
> 1. Worker's Compensation and Occupational Disease Insurance in accordance with the applicable law or laws: Employer's Liability Insurance with Limit of Liability of at least Five Hundred Thousand ($500,000) Dollars, including Voluntary Compensation, United States Longshoreman and Harbor Worker's and All States Endorsements.
>
> 2. Comprehensive General Liability with a combined Bodily Injury and Property Damage Limit of Five Million ($5,000,000) Dollars including the following perils:
>
> a. Broad Form Blanket Contractual Liability for liability assumed under this Contract and all other Contracts relative to the Project.
>
> * * *

E. The carrying of the insurance described shall in no way be interpreted as relieving the Contractor of any responsibility or liability under this Contract.

F. Any policies effected by the Contractor shall in no way be interpreted as relieving the Contractor of any responsibility or liability under this Contract.

G. All insurance, where permissible shall include the interests of Gateway IV Joint Venture; The Equitable Life Assurance Society of the United States; TJC Associates ***; Tishman Construction Corporation of Illinois ***; Chicago Union Station ***.

*Rider 'C' Insurance Liability Addendum*
* * *

7(d) The Contractor agrees to indemnify and save harmless the Indemnitees against loss and expense by reason of claims or of the liability imposed by law upon the Indemnitees for damages because of bodily injuries, including death at any time resulting therefrom, sustained by any employee of the Contractor and or any Subcontractor while at the site where work under this contract is conducted, or elsewhere, while engaged in the performance of work under this contract, however such injuries may be caused whether attributable to a breach of statutory duty or administrative regulation or otherwise, unless such injury is caused solely by the negligence of the Indemnitees."

█ When parties to a business transaction mutually agree that insurance will be provided as part of the bargain, then that agreement must be interpreted as providing mutual exculpation to the bargaining parties. The parties are deemed to have agreed to look solely to the insurance in the event of loss and not impose liability on the part of the other party. *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 378, 408 N.E.2d 1129, 1132; *General Cigar Co. v. Lancaster Leaf Tobacco Co.* (D. Md. 1971), 323 F. Supp. 931.

Chicago Union urges that we reject the holdings of the *Vandygriff* and *General Cigar* opinions and follow the decision in *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032. According to Chicago Union, *Rome* stands for the proposition that the fact that an indemnitee's liability is covered by insurance does not negate the indemnitor's obligation. (81 Ill. App. 3d at 783.) However, *Rome* is distinguishable from the present case. In *Rome* the insurance policy purchased by the indemnitor pursuant to the terms of the contract did not name the indemnitor as an insured, whereas, in the

present case, not only was NWC the indemnitor and purchaser of the policy on behalf of Chicago Union, it was also a named insured and beneficiary under the Bituminous policy.

Chicago Union also cites *Dowling v. Otis Elevator Co.* (1989), 192 Ill. App. 3d 1064, 549 N.E.2d 866, in support of its contention. *Dowling* is likewise distinguishable from the present case. In *Dowling* the trial court granted the third-party defendant's motion to dismiss the contribution action brought by the construction manager against the subcontractor. The contribution action sought to recover damages for the alleged negligence of the subcontractor which contributed to the plaintiff's death. The motion to dismiss was based on the fact that the parties' contractual agreement provided that the subcontractor was to provide insurance coverage on behalf of the construction manager. The motion to dismiss was granted before liability was determined either by settlement or judgment. On appeal, this court reversed the dismissal order, holding that the insurance provision in the parties' contract did not exculpate the subcontractor from liability or preclude the construction manager from bringing a third-party action against the subcontractor who purchased the insurance.

■ In the present case, the issue of liability was resolved by settlement of the parties. That settlement in the amount of $875,000 was paid from the proceeds of the Bituminous insurance policy purchased by NWC on behalf of itself and Chicago Union. Under these circumstances, where the liability of the parties has been determined and satisfied from the proceeds of an insurance policy provided by NWC pursuant to the parties' contractual agreement, Chicago Union's contribution action was properly dismissed.

■ An insurer is bound not to put its own interest ahead of the protection it had promised its insureds. (*United States Steel Corp. v. Hartford Accident & Indemnity Co.* (7th Cir. 1975), 511 F.2d 96, 101.) In addition, an insurer owes its insureds a duty of fair dealing and does not have the right to manipulate an action in order to excuse itself from protecting its insureds. *United States Steel Corp.*, 511 F.2d at 101.

■ In the present case, Bituminous, through Chicago Union, is attempting to shift onto NWC, its insured and the purchaser of its policy, the liability for Briseno's claim. Bituminous' actions in this matter are unconscionable and will not be allowed. The demolition contract entered into between Chicago Union and NWC provided that the parties were to be protected against bodily injury claims arising from NWC's demolition work by a comprehensive general liability policy to be purchased by NWC. This agreement was thereafter fulfilled

in all respects. National purchased the required policy from Bituminous; Bituminous defended Chicago Union against the Briseno claim; and the Bituminous policy covered the $875,000 settlement entered into between Briseno and Chicago Union.

Thus, by means of the insurance policy purchased by NWC, Chicago Union has been totally protected and indemnified against all loss (including costs of defense) and the intent and purpose of the contract has been fully carried out. To allow Bituminous, through Chicago Union, to now seek an additional recovery from NWC would allow Chicago Union to recover twice for the same loss and allow Bituminous to manipulate this action so that the party that purchased the policy and paid the premium bears the loss. Chicago Union and Bituminous' attempt to obtain contribution from NWC must fail. We therefore conclude that the trial court did not err in granting NWC's motion to dismiss Chicago Union's third-party contribution claim.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

WHITE and FREEMAN, JJ., concur.