JOHN MONICAL, Plaintiff, v. STATE FARM INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant (V. Jobst and Sons, Inc., Third-Party Defendant-Appellee).

Fourth District   No. 4—90—0524

Opinion filed March 29, 1991.

William C. Wombacher, of Law Offices of Prusak, Winne & Wombacher, Ltd., of Peoria, for appellant.

Karen L. Kendall, Gary D. Nelson, and Timothy D. Seifert, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

State Farm Insurance Company (State Farm) appeals from the trial court's order granting V. Jobst & Sons' (Jobst's) motion for summary judgment. We affirm.

On May 27, 1983, State Farm contracted with Jobst for alterations and repairs on the State Farm building in Bloomington, Illinois. The contract provided for the purchase of insurance for the project and stated in pertinent part:

*"ARTICLE 11 INSURANCE*

11.1 CONTRACTOR'S LIABILITY INSURANCE: PARA-GRAPHS 11.1.1, 11.1.2, 11.1.3 AND 11.1.4 ARE DELETED AND THE FOLLOWING SUBSTITUTED:

11.1.1 THE CONTRACTOR SHALL PURCHASE AND MAINTAIN COMPREHENSIVE GENERAL LIABILITY IN-SURANCE AS REQUIRED TO PROTECT HIMSELF, THE ARCHITECT AND THE OWNER FROM CLAIMS SET FORTH BELOW WHICH MAY ARISE OUT OF OR RESULT FROM OPERATIONS OF THE CONTRACTOR OR ANY SUBCONTRACTOR UNDER THE CONTRACT ***.

\* \* \*

11.1.4 APPROVAL OF THE INSURANCE BY THE OWNER SHALL NOT RELIEVE OR DECREASE THE LIABILITY OF THE CONTRACTOR. THE OWNER DOES NOT IN ANY WAY REPRESENT THAT THE INSURANCE OR THE LIM-ITS OF INSURANCE SPECIFIED IN THESE ARTICLES ARE SUFFICIENT OR ADEQUATE TO PROTECT THE CONTRACTOR'S INTERESTS OF LIABILITIES, BUT ARE MINIMUMS. ***

11.3 PROPERTY INSURANCE. PARAGRAPHS 11.3.1 AND 11.3.6 ARE DELETED AND THE FOLLOWING SUBSTI-TUTED. ***

11.3.6 THE OWNER AND CONTRACTOR WAIVE ALL RIGHTS AGAINST (1) EACH OTHER AND THE SUBCON-TRACTORS, SUB-SUBCONTRACTORS, AGENTS AND EM-PLOYEES EACH OF THE OTHER, AND (2) THE ARCHI-TECT AND SEPARATE CONTRACTORS, IF ANY, AND THEIR SUBCONTRACTORS, SUB-SUBCONTRACTORS, AGENTS AND EMPLOYEES, FOR DAMAGES CAUSED BY FIRE OR OTHER PERILS TO THE EXTENT COVERED BY INSURANCE OBTAINED PURSUANT TO THIS PARA-GRAPH 11.3 OR ANY OTHER PROPERTY INSURANCE APPLICABLE TO THE WORK, EXCEPT SUCH RIGHTS AS THEY MAY HAVE TO THE PROCEEDS OF SUCH INSUR-ANCE HELD BY THE OWNER AS TRUSTEE."

Jobst purchased the insurance required by the contract, including polices from four insurance companies covering general comprehensive, automobile, excess, and workers' compensation liability. Transamerica Insurance Company provided general liability insurance under policy No. 18869866, which covered the insureds for bodily injury in the amount of $500,000 for each occurrence. Jobst was the owner and

named insured of policy No. 18869866, and State Farm was listed as an additional insured. The general liability policy, however, did not cover Jobst for injuries sustained by an employee during the course of his employment or for any obligation of the insured to indemnify another because of damages arising out of such injury. Transamerica also issued Jobst a separate policy, No. WC1148606, for workers' compensation in the amount of $100,000 per occurrence.

Also included in the coverage plan were three policies for excess liability. Under these excess liability policies, Jobst was insured for bodily injury in the amount of $5 million. These three policies were issued by three separate companies, and not by Transamerica.

On January 3, 1986, John Monical, an employee of Jobst, filed a complaint against State Farm seeking recovery under the Structural Work Act (Act) for personal injuries sustained on the roof of the State Farm building on July 6, 1984. (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69.) Transamerica engaged counsel to defend State Farm. On September 21, 1988, State Farm brought a third-party complaint against Jobst seeking contribution. State Farm alleged that Jobst, as the general contractor on the construction site and Monical's employer, committed negligent acts or violations of statute that led to Monical's injury.

On January 12, 1990, Jobst filed a motion to continue which stated that Monical had settled his claim against State Farm. The settlement amount was within the general liability policy's limit for bodily injury and left remaining State Farm's cause of action for contribution. The motion to continue also stated that Jobst's excess carrier had not been involved in the lawsuit until the settlement because its duty did not arise until that time. Prior to that time, Jobst's primary carrier, Transamerica, was responsible for Jobst's defense.

On January 25, 1990, Jobst established the affirmative defense that it had purchased the general liability insurance policy from Transamerica on behalf of State Farm and had paid all the premiums. On May 2, 1990, Jobst filed a motion for summary judgment. In its motion, Jobst included deposition testimony from Gary Frankeberger, manager of construction services at State Farm, concerning the section of the contract requiring insurance. Frankeberger stated that under the standard American Institute of Architects (AIA) contract, which State Farm uses, the obligation to purchase insurance is on the owner of the building and the contractor themselves. State Farm, however, changed the language of the standard AIA contract so that the contractor would be responsible for obtaining insurance for both the owner of the building, State Farm, as well as itself. Jobst argued

in its motion that summary judgment was appropriate under the facts of the case.

The trial court granted Jobst's motion for summary judgment on June 29, 1990. The court found that Jobst's purchase of insurance pursuant to the contractual obligation with State Farm satisfied any statutory duty of contribution up to the amount of insurance provided by the policy of insurance, and that this barred any action for contribution by State Farm. State Farm filed a timely notice of appeal.

The sole issue presented for review is whether State Farm can seek contribution from Jobst, after Jobst purchased insurance for State Farm pursuant to their contract and State Farm has been defended and fully protected. The same issue has been addressed in Illinois by three First District Appellate Court opinions: *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032, *Vandygriff v. Commonwealth Edison Co.* (1980), 87 Ill. App. 3d 374, 408 N.E.2d 1129, and *Briseno v. Chicago Union Station Co.* (1990), 197 Ill. App. 3d 902, 557 N.E.2d 196. Another case, also from the first district, *Dowling v. Otis Elevator Co.* (1989), 192 Ill. App. 3d 1064, 549 N.E.2d 866, involved a similar issue.

In *Rome,* a construction company, Walsh, contracted with a power company, Edison, to perform work on a power plant. Pursuant to the contract, Walsh purchased a general liability insurance policy covering all work-related acts performed by Walsh. The policy named only Edison as the insured. Plaintiff, Walsh's employee, filed suit against Edison pursuant to the Act for injuries sustained while working at Edison's plant. Edison filed a third-party complaint for indemnity against Walsh, and Walsh filed a motion to dismiss, arguing that the general liability insurance policy purchased by Walsh, naming Edison as the beneficiary, satisfied any right of indemnity Edison may have had against Walsh. The trial court granted Walsh's motion to dismiss, but the appellate court reversed. The appellate court held that the obligation to obtain insurance was contractual, and found nothing in the contract to indicate that the parties intended the mere obtaining of insurance to relieve Walsh of all liability to indemnify Edison. The court also relied on previous cases which have held that the fact that an indemnitee's liability is covered by insurance does not negate the indemnitor's obligation. *Rome,* 81 Ill. App. 3d at 783, 401 N.E.2d at 1036, citing *Spurr v. LaSalle Construction Co.* (7th Cir. 1967), 385 F.2d 322, 331, citing *Shell Oil Co. v. Hercules Construction Co.* (1966), 74 Ill. App. 2d 166, 219 N.E.2d 392.

A few months after the *Rome* decision, the first district decided *Vandygriff. Vandygriff* involved the same contract, property owner

(Edison), and issue as the *Rome* decision. The *Vandygriff* court, however, also had deposition testimony from two of Edison's representatives indicating that Edison intended the insurance purchased by the contractor, Newberg, to replace a void indemnity provision in the contract. The void indemnity provision provided that Newberg would indemnify Edison for acts attributed to Edison's negligence. Newberg purchased the required insurance pursuant to the contract and apparently named only Edison as the insured. The same insurance company insured Edison and Newberg under separate insurance policies for the work performed on Edison's plant.

Two of Newberg's employees brought suit against Edison under the Act, and the insurance company engaged counsel to defend Edison. The suits were eventually settled and the attorneys representing Edison filed a third-party complaint against Newberg based on common law indemnity. Newberg filed a motion for summary judgment and argued that Edison had no right to seek indemnity based on the intent of the parties and the fact that Newberg had purchased the insurance policy. The trial court granted Newberg's motion for summary judgment and Edison appealed. The appellate court affirmed and based its finding on the intent of the parties as well as the duty of the insurance company to its insureds.

■ The *Vandygriff* court first noted that a contract is to be construed as a whole, and the primary object of the construction of a contract is to give full effect to the intention of the parties. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) The court found, in looking at the contract, that it was the intent of the parties that the insurance would be used to indemnify against bodily injury claims arising from Newberg's work. The appellate court noted that the contract involved gave Edison the right to request insurance, which Edison subsequently did. The court then looked to prior decisions which have held that when parties include insurance in a contract, they intend to look to the insurance instead of themselves for liability. One of those cases, *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100, involved a lease which provided for fire coverage. Both the lessor and its insurer, as subrogee, sought recovery against the lessee for loss due to fire damage. The supreme court did not allow the subrogee to recover because, looking at the lease as a whole, the parties intended that the lessor would look only to insurance as compensation for loss caused by fire. The court found this intent because the parties had contemplated that the risk of loss by fire would be insured against.

The *Vandygriff* court also cited a Federal decision which held that when parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, that agreement must be interpreted as providing mutual exculpation to the bargaining parties. (*General Cigar Co. v. Lancaster Leaf Tobacco Co.* (D. Md. 1971), 323 F. Supp. 931.) The *General Cigar Co.* court believed that under such contracts, the parties must be deemed to have agreed to look solely to the insurance, and not to each other, in the event of loss.

The *Vandygriff* court next noted that it did not agree with the reasoning of the *Rome* court in that case. Looking at the contract itself, even though it was the same one involved in *Rome*, the *Vandygriff* court concluded that the intent of the parties was that the insurance provision would be used to indemnify against bodily injury claims arising from Newberg's work. The court did not believe that Newberg intended the insurance for any other purpose than to protect itself from such a suit. The court also noted that it relied on the deposition testimony in making this finding.

Edison contended in *Vandygriff* that while the insurance company insured both Edison and Newberg, they were insured under separate polices, and Edison was thus not precluded from bringing the suit. The *Vandygriff* court disagreed and noted that the insurance company had a duty to its insured. (*United States Steel Corp v. Hartford Accident & Indemnity Co.* (7th Cir. 1975), 511 F.2d 96.) The *Hartford* decision, involving similar facts as *Vandygriff*, held that an insurance company could not escape its policy obligations by manipulating the pleadings in a lawsuit for its own benefit. The *Hartford* court stated:

> "Hartford owed each of its insureds a duty of fair dealing. Whether the relationship be labeled fiduciary or not, the insurer is bound not to put its own interest ahead of the protection it has promised its insureds." (*Hartford*, 511 F.2d at 101.)

The *Vandygriff* court believed the same was true under the facts of its case.

The third and latest decision dealing with the issue on appeal is *Briseno*. In *Briseno*, Chicago Union Station Company (Chicago Union) contracted with National Wrecking Company (NWC) for demolition work. Pursuant to the terms of the contract, NWC purchased comprehensive general and contractor's liability insurance and excess comprehensive general liability coverage from the the same insurer, Bituminous. The policies issued to NWC named NWC and Chicago Union as insureds, and NWC paid all premiums.

An NWC employee brought suit against Chicago Union under the Act, and Bituminous defended Chicago Union. Chicago Union,

through Bituminous, also filed a third-party action for contribution against NWC. NWC moved for summary judgment on the basis that Chicago Union had no right to seek further recovery from NWC for a loss against which it had already been fully protected by NWC's purchase of insurance. NWC also argued that Bituminous had no right to manipulate the proceeding to shift the loss back to NWC, a named insured and purchaser of the policy. The trial court initially denied the motion, but stated that Chicago Union could only maintain its action for contribution against NWC if Chicago Union's liability was not completely covered by the insurance policy purchased by NWC. Bituminous subsequently settled with the plaintiff for an amount within the policy limits, and the trial court granted NWC's motion to dismiss. Chicago Union appealed.

The appellate court in *Briseno* affirmed the trial court. The court first cited *Vandygriff* and *General Cigar Co.* for the rule that when parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, that agreement must be interpreted as providing mutual exculpation to the bargaining parties. (*Briseno*, 197 Ill. App. 3d at 905, 557 N.E.2d at 198, citing *Vandygriff*, 87 Ill. App. 3d at 378, 408 N.E.2d at 1132, and *General Cigar Co.*, 323 F. Supp. at 941.) The *Briseno* court also cited the rule of law from *Hartford* concerning the duty of an insurer to its insured. *Briseno*, 197 Ill. App. 3d at 906, 557 N.E.2d at 199, citing *Hartford*, 511 F.2d at 101.

The *Briseno* court distinguished *Rome* by noting that the policy at issue in *Rome* did not name the contractor as an insured. In *Briseno*, however, not only was NWC the indemnitor and purchaser of the policy on behalf of Chicago Union, it was also a named insured and beneficiary under the policy. The *Briseno* court concluded that Bituminous, through Chicago Union, was attempting to shift the liability for the plaintiff's claim onto NWC, its insured, and the purchaser of the policy. The court found such an attempt unconscionable. To allow the insurer, through Chicago Union, to seek an additional recovery from NWC would allow Chicago Union to recover twice for the same loss and allow the insurer to manipulate the action so that the party that purchased the policy and paid the premiums would bear the loss.

Another decision, not involving the exact issue on appeal, but relied on by State Farm, is *Dowling*. *Dowling* involved a subcontractor (Otis) which brought suit against a construction manager (Schal), for which it worked. An employee of Schal was killed in an accident on the job and brought suit against Otis. Otis subsequently filed a third-party complaint against Schal for contribution and Schal moved to dismiss, contending that Otis had agreed to name Schal as an addi-

tional insured on its comprehensive general liability policy. Schal argued that because Otis named it as an insured on its general liability policy, Otis had agreed to indemnify Schal through insurance. The trial court granted Schal's motion, but the appellate court reversed, finding that the insurance provisions in the contract did not show the intent of the parties to mutually exculpate each other. The *Dowling* court held that a promise to obtain insurance is not the same as a promise to indemnify, and noted that the contract between Otis and Schal did not include explicit language stated in unequivocal terms that Otis intended to exculpate Schal from Schal's own negligence. The court also noted, however, that the judgment against Schal might well be satisfied out of insurance proceeds obtained by Otis for Schal. The amount of liability was unknown since the original suit had not been settled.

In the instant appeal, State Farm argues that this court should rely on the contract analysis used in *Rome, Vandygriff*, and *Dowling*, look to the contract here, and find the intent of the parties was not to mutually exculpate each other. Jobst argues that the instant case is more like *Vandygriff* and *Briseno* and urges this court to rule as those courts did. We agree with Jobst and the reasoning found in *Vandygriff* and *Briseno*.

■■ ■ When parties to a business transaction agree that insurance will be provided as a part of the bargain, the agreement must be interpreted as providing mutual exculpation to the bargaining parties. The parties are thus deemed to have agreed to look solely to the insurance in the event of loss, and not impose liability on the other. (*Briseno*, 197 Ill. App. 3d at 905, 557 N.E.2d at 198, citing *Vandygriff*, 87 Ill. App. 3d at 378, 408 N.E.2d at 1132, and *General Cigar Co.*, 323 F. Supp. at 941.) Here, the parties contemplated that insurance was to be provided in their contract. Moreover, Frankeberger's testimony revealed that State Farm had modified the standard AIA contract to provide that the contractor would purchase insurance to protect State Farm. Thus, construing the contract as a whole, we find the parties manifested the intention that the insurance provided by Jobst on behalf of State Farm was to protect against any personal liability to Jobst as well as State Farm. We cannot believe that Jobst intended the insurance for any other purpose than to protect itself from a suit such as this. Thus, State Farm may not now claim the right of contribution after it has been defended, fully protected, and the intent of the contract has been fulfilled.

State Farm argues, however, that while *Rome, Vandygriff*, and *Dowling* all properly used a contract analysis to determine the intent

of the parties, *Briseno* disregarded this contract analysis in favor of a general rule of law. State Farm urges this court to reject *Briseno* and argues that the *Briseno* court erred by grossly overstating the reliance of the *Vandygriff* court on the general rule of *General Cigar Co.* However, it is apparent that *Vandygriff* did rely on the rule of *General Cigar Co.* in finding the intent of the parties to mutually exculpate each other. State Farm also argues that in distinguishing *Rome* and *Dowling*, *Briseno* avoids confronting the reasoning of those cases because of two "irrelevant and insignificant" facts. The first of these facts is that in *Rome*, the general contractor was not a named insured. In *Briseno*, the contractor was a named insured and beneficiary under the policy. This fact, however, is neither insignificant nor irrelevant, considering the analysis used by *Vandygriff* and *Briseno* concerning the duty of an insurance company to its own insured.

The second fact relied on by *Briseno* which State Farm believes to be irrelevant and insignificant is the fact that the issue of liability in *Dowling* was not yet resolved, *i.e.*, the original case had not been settled. State Farm argues that the status of the original suit is irrelevant. However, the distinction the *Briseno* court was drawing was that in *Dowling*, because the issue of liability between the plaintiff and defendant had not been resolved, it was not known whether the insurance policy would cover the entire liability. The *Dowling* court even noted that the construction manager's liability might be covered entirely by the insurance company which insured him and sought contribution from him. If this occurred, the insurer would have literally sued itself. However, because the liability had not yet been established, the court allowed the suit in the event that the construction manager's liability exceeded the amount of the policy obtained for it by the subcontractor. This same reasoning can be seen in *Briseno*, where the trial court at first refused the contractor's motion to dismiss because the issue of liability had not yet been determined. However, after the plaintiff in *Briseno* settled with the building owner within the policy limits, the trial court granted the contractor's motion to dismiss.

State Farm next argues that under a contract analysis, the intent of the parties in the instant case is clear: the parties did not intend to exculpate each other through the purchase of insurance. Because of this, State Farm argues, the right of contribution has not been waived. State Farm cites *Dowling* and argues that unless a contract clearly and unequivocally indicates otherwise, the mere obtaining of insurance does not bind a party to exculpate the insured from any and all loss associated with a particular venture. State Farm argues that

there is no clear and unequivocal language in the instant contract to show it intended to exculpate Jobst from Jobst's own negligence. Instead, State Farm argues, the contract includes language which shows the parties' intent not to mutually exculpate each other through the purchase of insurance. State Farm argues that the parties were aware of the language necessary to exculpate each other if such was the intent, and notes the insurance clause concerning property damage in which State Farm and Jobst waived all rights against each other for property damage. State Farm also cites section 11.1.4 of the contract, which provided that approval of the insurance by State Farm would not relieve or decrease the liability of the contractor and that State Farm did not represent that the insurance specified in the articles was sufficient to protect Jobst's interests or liabilities, but were minimums.

■ In response to this argument, we note that *Dowling* involved a different set of facts than the instant case, and we do not find it controlling. As noted above, *Briseno* and *Vandygriff* are controlling here. Moreover, State Farm's argument concerning the property clause may be dismissed as the clause only pertained to loss *inter se*, and not loss to others. Finally, section 11.1.4 does not affect our decision as it provides that the insurance purchased by Jobst was a minimum amount. Thus, section 11.1.4 is not even applicable here where the lawsuit was settled within the policy amount. We also note that the contract in *Briseno* included a clause similar to section 11.1.4, and it did not affect that court's decision.

■■ ■ Next, State Farm argues that, in essence, the suit is not between State Farm and Jobst, but Transamerica and Jobst's excess carrier. Thus, State Farm believes it is not unfair to allow such a suit. State Farm also believes that *Briseno* is not applicable here because the insurer in *Briseno* was suing the contractor itself, and not an excess insurance company. State Farm failed to raise this argument in either the trial court or its initial brief before this court and raises it for the first time in its reply brief. Questions not raised in the trial court are waived and may not be raised for the first time on review. (*In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill. 2d 555, 568, 524 N.E.2d 538, 543-44.) Moreover, Supreme Court Rule 341(e)(7) provides that points not raised in an appellant's initial brief are waived and shall not be raised in the reply brief. (134 Ill. 2d R. 341(e)(7); *In re Liquidations*, 122 Ill. 2d at 568, 524 N.E.2d at 544.) State Farm has waived this issue for review. Even were we to consider this argument, we would not find it convincing. An insurer has a duty of fairness to its insured, and the insurer is bound not to put its

own interest ahead of the protection of its insureds. (*Vandygriff*, 87 Ill. App. 3d at 379, 408 N.E.2d at 1133, citing *Hartford*, 511 F.2d at 101.) Transamerica, as insurer for State Farm and Jobst, does not have the right to collect any funds from Jobst or Jobst's excess insurer in this situation.

State Farm also argues that the issue of who paid for the insurance is irrelevant because the price of the insurance was included in the contract price. Moreover, State Farm argues, the contribution statute does not mention insurance. State Farm believes that Jobst is attempting to add words to the statute. State Farm concludes that both parties here were sophisticated entities that made knowing changes to the contract and that any waiver of subrogation rights had to be explicit, as was done in the insurance property clause. Again, State Farm raises this argument for the first time in its reply brief and has waived the arguments for review.

Accordingly, the decision of the trial court is affirmed.

Affirmed.

LUND, P.J., and McCULLOUGH, J., concur.