**Robert G. ORR, Plaintiff,**

v.

**INDIANA HARBOR BELT RAILROAD COMPANY, Defendant and Third Party Plaintiff,**

v.

**ALBIN CARLSON & COMPANY, Third Party Defendant.**

**No. 96 C 570.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 15, 1997.

George T. Brugess, Hoey, Farina & Downes, Chicago, IL, for Plaintiff.

Richard F. Johnson, Lord, Bissell & Brook, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Indiana Harbor Belt Railroad Company ("Railroad"), the sole defendant in this FELA action brought by its employee Robert Orr ("Orr"), responded in part by filing a Third Party Complaint against Albin Carlson & Company ("Carlson"), seeking contribution under the Illinois statute that provides for such a remedy among joint tortfeasors (740 ILCS 100/1 to 100/5). Railroad claims that Carlson's negligence in allowing debris to fall from the bridge reconstruction project that Carlson was carrying out under a contract that had been let by the Illinois Department of Transportation ("IDOT") proximately contributed to cause Orr's injuries Because the bridge spanned part of Railroad's right-of-way, IDOT and Railroad had also entered into a separate contract ("Agreement") that in part imposed certain obligations on contractor Carlson.

■ Carlson has now moved under Fed. R.Civ.P. ("Rule") 56 for summary judgment on Railroad's contribution claim, advancing the same contention that Carlson had included in its Amended Answer and Affirmative Defense to the Third Party Complaint: an argument (1) that the Agreement required Carlson to provide liability insurance covering Railroad as to injuries that could arise from Carlson's work during the bridge reconstruction project, (2) that Carlson fulfilled that obligation and (3) that under Illinois law such a scenario creates a mutual exculpation that negates any possible contribution claim by Railroad. Railroad has both responded to Carlson's Rule 56 motion and filed its own cross-motion under Rule 12(c) for a judgment on the pleadings that would dismiss Carlson's affirmative defense to that effect. With the cross-motions having been fully briefed, they are ripe for disposition.

Both sides agree that a railroad's right to recover contribution from a third party for FELA-incurred liability is a function of state law—in this instance, Illinois law (see, e.g., *Schrier v. Indiana Harbor Belt R.R.*, 82 Ill.App.3d 561, 562, 37 Ill.Dec. 870, 872, 402 N.E.2d 872, 874 (1st Dist.1980); *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1282 (3d Cir.1987) and numerous cases and authorities cited there). Nor is there any dispute over the fact that the Agreement obligated Carlson, which had been awarded the construction contract by IDOT, to Provide Railroad with liability insurance affording very substantial coverage (Agreement § 7):

The STATE shall require its contractor(s) to perform his/her (their) work in accordance with the "Standard Specifications for Road and Bridge Construction" adopted July 1, 1988, and the "Supplemental Speci-

fications" in effect on the date of invitation for bids. A single Railroad Protective Liability Insurance policy, naming the COMPANY [Railroad], shall be carried in limits of $2,000,000 combined single limit per occurrence for bodily injury liability and property damage liability with an aggregate limit of $6,000,000 over the life of the policy as set forth in Federal–Aid Policy Guide, Chapter I, Subchapter G, Part 646, Subpart A (23 CFR 646A).

Finally, it is undisputed that Carlson did exactly that by obtaining a policy from Seaboard Surety Company ("Seaboard") to protect Railroad, and that Seaboard has accepted Railroad's defense and has retained Railroad's attorneys to defend the present lawsuit.

Because Illinois law provides the substantive rules of decision, Carlson points to *Briseno v. Chicago Union Station Co.*, 197 Ill. App.3d 902, 145 Ill.Dec. 426, 557 N.E.2d 196 (1st Dist.1990) to support its Rule 56 motion. There as here a contractor (in that instance a company carrying out the demolition of the old Union Station building) provided a liability policy, as required by the construction contract, that insured the building owner. When an employee working on the project was killed and a lawsuit then ensued against the building owner, the owner sought contribution from the contractor (again a situation parallel to the present action). And *Briseno, id.* at 905, 145 Ill.Dec. at 428, 557 N.E.2d at 198 swiftly disposed of that claim with this flat statement of the legal principle involved:

> When parties to a business transaction mutually agree that insurance will be provided as part of the bargain then that agreement must be interpreted as providing mutual exculpation to the bargaining parties. The parties are deemed to have agreed to look solely to the insurance in the event of loss and not impose liability on the part of the other party.

Accordingly the *Briseno* court upheld the trial court's dismissal of the third-party contribution claim by the building owner.

By its terms *Briseno* would appear to dispatch Railroad's contribution claim entirely. And Railroad's efforts to respond are totally unpersuasive. Little discussion is required to scotch those responsive arguments, just as the *Briseno* statement itself scotches Railroad's third-party claim for contribution.

For one thing, Railroad seeks to make much of the fact that the Agreement that required Carlson to provide insurance conformed to the requirements of federal regulations, that the Agreement was not a contract entered into directly between Railroad and Carlson and that Carlson did not itself pay for the insurance because of the nature of its contract with IDOT (apparently a cost-plus arrangement). All three of those factors are really total irrelevancies in legal terms, and the third one also ignores the economic truth that when a contract is bid, all of its specified terms and conditions necessarily enter into the amount of the bid that the bidder decides to make. None of Railroad's artificial distinctions renters the basic principle stated in *Briseno* inapplicable.

■ As for the rest, Railroad attempts at length to persuade this Court that *Briseno* has misapplied the earlier Illinois cases that the Appellate Court cited in support of its conclusion.[1] But that argument is bootless— where a federal court looks to Illinois Supreme Court doctrine, the Illinois courts are masters of the handling of their own precedents (and in this instance this Court is duty-bound under Illinois law, as pronounced in *State Farm Fire & Cas. Co. v. Yapejian,* 152 Ill.2d 533, 539–40, 178 Ill.Dec. 745, 748, 605

---

1. For example, Railroad Mem. 5 chastises the *Briseno* court for not having correctly read one of the earlier cases that it cites, by expressing Railroad's counsel's own interpretation of that earlier decision and then stating:

> To the extent that *Briseno* may imply otherwise, it exemplifies the dangers of relying on Westlaw keynotes rather than proper legal analysis.

That kind of pitch might perhaps work if this matter were before the Illinois Supreme Court, which has the ultimate say as to Illinois law (although such a lawyer's expression of disrespect for the analytical powers of the Justices of the Illinois Appellate Court would seem to run a serious risk of triggering a backlash effect). But what is most important here is that any such criticism must fall on deaf ears in a federal court that is bound by Illinois law as it has been pronounced by an Illinois court (see the next sentence in the text).

N.E.2d 539, 542 (1992), to adhere to the *Briseno* decision). Nor is it relevant that, unlike the situation in *Briseno*, the Seaboard policy at issue in case did not cover both Carlson and Railroad.[2] Finally, Railroad's invocation of a text on *Commercial Liability Insurance* and of cases decided under New York law cannot prevail to divert this Court from conforming to *Briseno's* plain statement of Illinois law.

Railroad Mem. 10–11 does try to escape the impact of *Briseno's* unequivocal teaching by pointing to three post-*Briseno* decisions: *Monical v. State Farm Insurance Co.*, 211 Ill.App.3d 215, 155 Ill.Dec. 619, 569 N.E.2d 1230 (4th Dist.1991); *Vaughn v. Commonwealth Edison Co.*, 259 Ill.App.3d 304, 197 Ill.Dec. 975, 632 N.E.2d 44 (3d Dist.1994); and *Kirincich v. Jimi Constr. Co.*, 267 Ill. App.3d 51, 203 Ill.Dec. 808, 640 N.E.2d 958 (2d Dist.1994).[3] But *Monical* unquestionably agreed with and followed *Briseno*—it actually parroted the language that this Court has quoted from that case. *Vaughn* involved a contractual indemnity undertaking on the part of the contractor (something that was totally absent here), so that the court held that it could not be said as a matter of law that the contractual obligation to provide insurance demonstrated an intent to look solely to that insurance in case of loss. And *Kirincich*, which went off on a totally different issue (as Railroad Mem. 11 itself recognizes), does not at all quarrel with *Briseno*. Overall, it is clear that Railroad gets no more mileage out of the post-*Briseno* case law than it does out of the pre-*Briseno* decisions.

In sum, there is no genuine issue of material fact (something that is recognized by the cross-motions here), and Carlson is entitled to a judgment as a matter of law on Railroad's third-party claim. Needless to say, Railroad's Rule 12(c) motion is correspondingly denied, and its Third–Party Complaint is dismissed. Although neither party has requested a Rule 54(b) determination, either or both may want to give consideration to that possibility under the authority of *National Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir.1986).

---

2. It is true that *Briseno* declined the invitation of the building owner there to reject the holdings of the precedents on which it relied (the very precedents that Railroad charges that the *Briseno* court misread!) in favor of another Illinois Appellate Court decision, *Rome v. Commonwealth Edison Co.*, 81 Ill.App.3d 776, 36 Ill.Dec. 894, 401 N.E.2d 1032 (1st Dist.1980). And it is also true that in doing so *Briseno* pointed out that the insurance policy purchased by the contractor in *Rome* named only the property owner and not the contractor (as is also the case here) But in *Rome* the issue was one of a right of *indemnity* (and not contribution) that was claimed because of the distinction between active negligence (on the part of the contractor) and passive negligence (on the part of the owner), and in those terms the

*Rome* court had declined to exculpate the contractor simply because of the purchased insurance policy, following the established principle that "the fact that an indemnitee's liability is covered by insurance does not negate the indemnitor's obligation." It would require at least two analytical jumps for this Court to extend the *Rome* decision to a rejection of *Briseno's* unequivocal language and holding—and *that* is an unpersuasive invitation that this Court rejects.

3. All three of those cases are from Appellate Districts other than the First. If, then, any of them called for a departure from *Briseno* (as they do not), the Illinois Supreme Court's directive in *State Farm v. Yapejian* would still require this Court to follow *Briseno*.