MARK J. KEHOE, Plaintiff, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee and Cross-Appellant (Abbott Contractors, Inc., Third-Party Defendant-Appellant and Cross-Appellee).

First District (5th Division)   No. 1—97—0600

Opinion filed May 15, 1998.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and John M. McGregor, of counsel), for appellant.

Schoen & Smith, Ltd., of Chicago (Lee J. Schoen, of counsel), for appellee.

JUSTICE THEIS delivered the opinion of the court:

The issues raised by this appeal and cross-appeal stem from a dispute over a contribution action brought by Commonwealth Edison Company as owner of a construction site against its contractor, Abbott Contractors, Inc., in connection with a personal injury suit brought by Abbott employee Mark J. Kehoe against Commonwealth Edison. Abbott appeals the trial court's denial of its posttrial motion and its judgment ordering contribution by Abbott in the amount of $118,564.21. On appeal, as below, Abbott claims its purchase of insurance for Commonwealth Edison from Aetna Casualty & Surety Company (Aetna), pursuant to the parties' construction contract and in an amount sufficient to extinguish Commonwealth Edison's liability to Kehoe, operated as a legal bar to Commonwealth Edison's contribution action.

Commonwealth Edison cross-appeals as to the amount of contribution owed, claiming the trial court erred when it determined the parties' contract did not provide for pure contribution and that Abbott's amount of contribution was limited to the amount of its liability under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)). Commonwealth Edison maintains the parties' contract contains a waiver of the statutory limitation on employer liability and provides for pure contribution from Abbott in the amount of $1,326,313.51, the amount of the settlement corresponding to the percentage of liability attributed to Abbott for Kehoe's personal injury. For the following reasons, we reverse.

Abbott entered into a construction contract with Commonwealth Edison. By separate provision, the contract required Abbott to obtain an insurance policy for Commonwealth Edison in Commonwealth Edison's own name with limits of liability of $2 million. The construction contract also contains a provision calling for "Contractor's Indemnification," one clause of which attempts to obtain for Commonwealth Edison indemnification for its own negligence.

Pursuant to the construction contract, Abbott purchased from Aetna a separate owners and contractors protective (OCP) liability

insurance policy for Commonwealth Edison with Commonwealth Edison as the sole named insured and Abbott as the designated contractor. The OCP policy provided liability coverage for Commonwealth Edison in the amount of $3 million, $1 million in excess of the construction contract's requirement. At the same time, Abbott also obtained a commercial general liability (CGL) policy with Aetna in its own name. Abbott's CGL policy's schedule of exclusions excludes from coverage the OCP policy. Abbott also had obtained workers' compensation insurance from another insurer.

During the period that Commonwealth Edison's OCP policy and Abbott's CGL policy with Aetna were in effect, Abbott employee Mark Kehoe was injured on the job and brought a personal injury action against Commonwealth Edison and the City of Chicago, alleging that each was negligent and that each had violated the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992)). The city was subsequently dropped from the suit, leaving Commonwealth Edison as the sole defendant.

Upon being sued by Kehoe, Commonwealth Edison filed and twice amended a third-party contribution complaint against Abbott. Count I of Commonwealth Edison's final amended complaint alleged various negligent acts or omissions by Abbott and sought contribution from Abbott for that portion of Kehoe's damages proximately caused by Abbott. Count II repeated the acts or omissions alleged in count I and invoked the construction contract's "Contractor's Indemnification" provision in support of its contribution claim. In count II, Commonwealth Edison requested contribution from Abbott "in any amount whatsoever," alleging that Abbott had "waived the worker's compensation defense by contract."

Abbott answered, raising the Workers' Compensation Act (820 ILCS 305/11 (West 1992)) as an affirmative defense to count I and requesting that any judgment against it be confined to the amount of its liability under the Workers' Compensation Act. As defenses to count II, Abbott raised the Construction Contract Indemnification for Negligence Act (Indemnity Act) (740 ILCS 35/1 (West 1992)) and the fact that the parties' contract preceded the court's decision in *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 585 N.E.2d 1023 (1991).

Additionally, as an affirmative defense to both counts, Abbott maintained that, pursuant to the parties' contract, it had obtained and paid for two liability insurance policies issued by Aetna: the CGL policy insuring Abbott and the OCP policy insuring Commonwealth Edison in its own name and listing Abbott as the designated contractor. Abbott further argued that the parties' agreement that insurance was to be provided should be interpreted as one of mutual exculpa-

tion, that the parties should be deemed to have agreed to look solely to the insurance in the event of a loss.

Kehoe tried his case against Commonwealth Edison to a jury. At the close of Kehoe's case in chief, Commonwealth Edison settled with Kehoe. The court issued an order on July 8, 1996, stating that "the complaint of the plaintiff against Commonwealth Edison is dismissed as all matters in controversy have been settled and adjusted between them," and allowing the case to continue as a third-party action between Commonwealth Edison and Abbott. The contribution action was tried by a jury, which found Abbott 68% liable and Commonwealth Edison 32% liable. Commonwealth Edison stipulated that it was defended under and would be indemnified for the settlement by the policy Abbott purchased for it from Aetna.

Abbott then filed a posttrial motion pursuant to section 2—1202 of the Code of Civil Procedure (735 ILCS 5/2—1202 (West 1992)), asking the trial court to vacate its judgment entered on the jury verdict and requesting entry of judgment in its favor notwithstanding the verdict or, alternatively, a new trial. Abbott maintained it was not liable to Commonwealth Edison in any amount and repeated its claim that Commonwealth Edison's action for contribution was barred as a matter of law.

Thereafter, the trial court entered an order dated November 13, 1996, confirming that Commonwealth Edison had made a good-faith settlement with Kehoe for $2 million and an assignment of rights under the Workers' Compensation Act to Commonwealth Edison. Previously, Kehoe had received workers' compensation in the amount of $402,684.14. In that order, also addressing Abbott's posttrial motion, the court found that Commonwealth Edison had a right to bring an action for contribution against Abbott, but determined that Abbott had not contractually waived the limitation on its liability under the Workers' Compensation Act. As a result, the trial court concluded that Abbott owed Commonwealth Edison, not pure contribution in the amount of 68% of the settlement but, rather, $118,564.21, an amount constituting 68% of plaintiff's expenses and 25% of the workers' compensation lien of $402,684.14.

Abbott appeals the trial court's judgment and denial of its posttrial motion. Commonwealth Edison contends on cross-appeal that the parties' construction contract provides for pure contribution and that Abbott is liable to Commonwealth Edison for 68% of the settlement, an amount of $1,326,313.51. We review *de novo* as a matter of law the trial court's judgment and finding that Commonwealth Edison's contribution action against Abbott was not barred. *Zook v. Norfolk & Western Ry. Co.*, 268 Ill. App. 3d 157, 169, 642 N.E.2d 1348, 1357 (1994).

■ In Illinois, two analytical approaches have developed as to the purchase of insurance in the context of contractual indemnification. In some instances, courts have analyzed the parties' contract to determine whether they intended to mutually exculpate one another from liability through the mechanism of the purchase of insurance. *Dowling v. Otis Elevator Co.*, 192 Ill. App. 3d 1064, 549 N.E.2d 866 (1989); *Rome v. Commonwealth Edison Co.*, 81 Ill. App. 3d 776, 401 N.E.2d 1032 (1980). By contrast, another series of decisions turned not upon contract analysis, but primarily upon the courts' application of the general rule of law that, when parties to a business transaction agree insurance will be provided as part of the bargain, the agreement must be interpreted as providing mutual exculpation to the bargaining parties. *Monical v. State Farm Insurance Co.*, 211 Ill. App. 3d 215, 569 N.E.2d 1230 (1991); *Briseno v. Chicago Union Station Co.*, 197 Ill. App. 3d 902, 557 N.E.2d 196 (1990); *Vandygriff v. Commonwealth Edison Co.*, 87 Ill. App. 3d 374, 408 N.E.2d 1129 (1980).

Courts have applied these distinct analytical approaches in diverse factual and legal contexts. In so doing, they of necessity confronted various ancillary issues posed by each case's unique context. For example, antisubrogation issues may exist depending upon the identity of the insurer, the status of the third-party defendant as an additional insured or as a "joint insured," the existence of multiple policies, and the type of policy at issue. In addition, the precise nature of the cause of action, whether the action was one for contractual or common law indemnity or for contribution, circumscribed the courts' decision in each case. These ancillary issues directly address the identity of the real party in interest and the nature of the right asserted.

Nevertheless, despite their analytical, factual, and contextual distinctions, the cases converge upon one dispositive issue regarding the status of the underlying suit: whether a settlement or judgment within the policy's limits was reached and fully funded by the insurer. See *Kirincich v. Jimi Construction Co.*, 267 Ill. App. 3d 51, 54-55, 640 N.E.2d 958, 960-61 (1994); *Vaughn v. Commonwealth Edison Co.*, 259 Ill. App. 3d 304, 306, 632 N.E.2d 44, 45-46 (1994); *Monical*, 211 Ill. App. 3d at 224, 569 N.E.2d at 1235; *Briseno*, 197 Ill. App. 3d at 906, 557 N.E.2d at 198. As noted in *Kirincich*, 267 Ill. App. 3d at 55, 640 N.E.2d at 961, even those cases holding that contribution was barred by the rule of mutual exculpation "arose in a factual context where the parties' joint insurance had absorbed the entire liability of the party seeking contribution." See *Monical*, 211 Ill. App. 3d 215, 569 N.E.2d 1230; *Briseno*, 197 Ill. App. 3d 902, 557 N.E.2d 196; *Vandygriff*, 87 Ill. App. 3d 374, 408 N.E.2d 1129.

As a threshold matter, we note that we have not been asked to determine, and we need not decide under the facts of this case, whether Abbott's purchase of two separate policies from the same insurer on the same day to insure against construction loss rendered the parties "joint insureds," so as to invoke the antisubrogation rule. See *North Star Reinsurance Corp. v. Continental Insurance Co.*, 82 N.Y.2d 281, 288, 624 N.E.2d 647, 649, 604 N.Y.S.2d 510, 512 (1993) (prohibiting insurers that issued both OCP and GCL policies naming contractors as insureds from recovering from contractors for amounts paid under policies). However, we are aware that, as noted in *Rome* in the context of an action for indemnification, third-party actions involving contractual agreements to provide both indemnification and insurance often conceal questions of subrogation and the identity of the real parties in interest. *Rome*, 81 Ill. App. 3d at 782-83, 401 N.E.2d at 1036.

In *Rome*, the court's decision was premised upon the assumptions that "the fact that an indemnitee's liability is covered by insurance does not negate the indemnitor's obligation" and that "the indemnitee's insurer, who had paid the indemnitee's liability and who was subrogated to the rights of the indemnitee, may recover from the indemnitor." *Rome*, 81 Ill. App. 3d at 783, 401 N.E.2d at 1036. Although this action for contribution conceals many of the subrogation issues directly addressed in *Rome*, the parties and their insurers did not bring this case as a subrogation action, and those issues remain beyond the scope of this appeal.

As framed by Abbott, the more narrow issue before us is whether Abbott's purchase of insurance, pursuant to the parties' construction contract in an amount sufficient to extinguish Commonwealth Edison's liability to Kehoe, operated as a legal bar to Commonwealth Edison's statutory contribution action. The correct resolution of this issue rests not only upon our interpretation of the parties' contract as evidencing their intent, but also upon the factual status of the underlying case: whether Commonwealth Edison's liability to Kehoe was in fact extinguished as a result of Abbott's purchase of insurance.

▮ Abbott relies on the rule of mutual exculpation to suggest that Commonwealth Edison's contribution action against it was barred as a matter of law. As explained in *Vandygriff*, 87 Ill. App. 3d at 377, 408 N.E.2d at 1131, in the context of an action for common law indemnity, the rule of mutual exculpation derives from *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F. Supp. 931 (D. Md. 1971), and provides: "when parties to a business transaction mutually agree that insurance will be provided as part of the bargain, then that

agreement must be interpreted as providing mutual exculpation to the bargaining parties." Our supreme court's previous conclusions that a lessee may be protected against an action brought by the lessor and its insurer, as subrogee, for recovery of losses due to fire damage are often used as justification for application of the rule in the construction context. See *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 323, 597 N.E.2d 622, 626 (1992) (majority concluding that, "[u]nder the particular facts of this case, the tenant, by payment of rent, has contributed to the payment of the insurance premium, thereby gaining the status of co-insured under the insurance policy"); *Cerny-Pickas & Co. v. C.R. Jahn Co.*, 7 Ill. 2d 393, 131 N.E.2d 100 (1955).

However, we are not persuaded that either the mutual exculpation rule or our supreme court's previous determinations regarding a fire insurer's right to bring a subrogation action against a particular tenant directly address the issues raised by this action: an action for contribution under the Act in the context of the specific language of the parties' construction contract. Instead, we find the context of this case requires us to analyze the parties' construction contract to determine their intent.

■ Initially, we note that a contract is to be construed as a whole and that our primary goal when construing a contract is to give effect to the parties' intentions. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283, 154 N.E.2d 683, 689 (1958). As a general rule, the parties' intentions are determined from their final agreement. *Vandygriff*, 87 Ill. App. 3d at 376, 408 N.E.2d at 1131. Moreover, "statutes and laws in existence at the time a contract is executed are considered part of the contract," and "[i]t is presumed that parties contract with knowledge of the existing law." *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217, 676 N.E.2d 1295, 1303 (1997). In addition, a construction of a contract rendering the agreement enforceable is preferred over one rendering the agreement void. *Schiro v. W.E. Gould & Co.*, 18 Ill. 2d 538, 543, 165 N.E.2d 286, 289 (1960).

■ Courts have held that the promise to obtain insurance is not the same as the promise to indemnify. *Dowling*, 192 Ill. App. 3d at 1070, 549 N.E.2d at 870. Moreover, in *Dowling*, the court concluded that a subcontractor's agreement to provide the contractor with insurance and to indemnify the contractor against the subcontractor's negligence was not the same as a clear and explicit waiver of the right to contribution. *Dowling*, 192 Ill. App. 3d at 1071-72, 549 N.E.2d at 871.

■ Abbott also contends that the clause in the contract's indemnity provision that attempts to obtain for Commonwealth Edi-

son indemnification for its own negligence is fatal to Commonwealth Edison's contribution action. We do not agree. As noted in *Vaughn v. Commonwealth Edison Co.*, 259 Ill. App. 3d 304, 305, 632 N.E.2d 44, 45 (1994), even though an indemnity clause in a construction contract itself may be void, its inclusion in the contract may be evidence of the parties' intent to look beyond the insurance provided in the event of a loss. Additionally, Commonwealth Edison's complaint expressly sought contribution from Abbott only for that portion of Kehoe's damages proximately caused by Abbott. It did not seek indemnification from Abbott for its own negligence. Therefore, we cannot conclude that the clause violated the policy behind the Indemnity Act. See *Braye*, 175 Ill. 2d at 217-18, 676 N.E.2d at 1304 (emphasizing the importance of the nature of the third-party complaint and finding indemnification provision not void as violative of the Indemnity Act where the nature of the complaint demonstrated the provision had not eliminated the incentive to exercise care).

Here, as in *Vaughn* and *Dowling*, the provisions of the construction contract at issue do not clearly express an intent by the parties to look solely to insurance in the event of a loss. Rather, when read as a whole, we believe the construction contract evidences the parties' intent to provide for potential losses first by the mechanism of insurance and then by indemnification. Indeed, section 12(b) of the parties' construction contract supports this interpretation of the contract. There, the parties agreed that, "to the extent the Owner is compensated by insurance as to which the Owner's insurance carrier's rights of subrogation have been waived or are required to be waived in accordance with the Contract," the contractor is not required to provide indemnification. We believe the parties intended the insurance to provide the first line of protection from a suit such as Kehoe's.

Therefore, the status of the underlying suit in this case was critical to the trial court's determination as to Commonwealth Edison's ability to maintain its contribution action. Under the terms of the parties' contract, Commonwealth Edison's contribution action was barred after Commonwealth Edison had been fully defended, fully protected, and the intent of the contract fulfilled.

So long as the potential for loss in excess of the policy's limits remained, Commonwealth Edison was at risk of a loss for which it could assert a statutory right to contribution. If, as in *Dowling*, the trial court had dismissed the contribution action before liability was determined either by settlement or judgment, Commonwealth Edison would have remained potentially at risk for an amount in excess of the policy's limits. Additionally, if the resources available under the

policy had been depleted or if Aetna had defended under a reservation of rights, denied coverage, or refused fully to fund the settlement with Kehoe, Commonwealth Edison would have been at risk of loss.

The order confirming settlement does not reference Aetna's payment to Kehoe of Commonwealth Edison's settlement with him in the amount of $2 million. Nevertheless, there is no evidence in the record that Aetna defended Commonwealth Edison under a reservation of rights, and Commonwealth Edison does not dispute that Aetna funded the settlement. Rather, at the close of its contribution action, Commonwealth Edison stipulated that the $2 million it paid in settlement to Kehoe were paid from the Aetna policy purchased by Abbott.

At that point, Commonwealth Edison was defended, its liability was fixed by settlement, its obligation to Kehoe was fully funded by Aetna, and the intent of the parties' contract fulfilled. As a result, we conclude the trial court erred when it denied Abbott's posttrial motion and entered judgment in favor of Commonwealth Edison in the amount of $118,564.21. Because we find that the trial court erred in failing to grant Abbott's motion for judgment notwithstanding the verdict and in entering judgment in favor of Commonwealth Edison in any amount, we need not consider whether the language of the parties' construction contract constitutes a contractual waiver of the limitations placed upon Abbott's amount of contribution under the Workers' Contribution Act.

Reversed.

HARTMAN and HOURIHANE, JJ., concur.